**PIONEER LUMBER, INC., and Keith R. Wiesemann, Appellants–Defendants,**

v.

**Gloria J. BARTELS, Appellee–Plaintiff.**

No. 64A05–9604–CV–138.

Court of Appeals of Indiana.

Nov. 22, 1996.

John B. Drummy, James W. Roehrdanz, Kightlinger & Gray, Indianapolis, for Appellants–Defendants.

Ronald P. Kuker, Jack A. Kramer, Hoeppner, Wagner & Evans, Valparaiso, for Appellee–Plaintiff.

BARTEAU, Judge.

In this interlocutory appeal, Pioneer Lumber, Inc., (Pioneer) and Keith R. Wiesemann, a Pioneer employee, request us to reverse the trial court's order compelling Pioneer to produce a copy of a surveillance videotape taken of Gloria J. Bartels after Bartels allegedly suffered injuries in a traffic accident with Wiesemann. The sole issue presented on appeal is whether the trial court committed an abuse of discretion when it ordered production of the tape.

We reverse and remand.

### FACTS

On November 3, 1992, Wiesemann backed his vehicle into an automobile driven by Bartels. Wiesemann was acting within the scope and course of his employment with Pioneer at the time of the accident. Bartels subsequently initiated suit against Pioneer and Wiesemann. During discovery, Bartels served Interrogatory No. 20 upon Pioneer and Interrogatory No. 24 upon Wiesemann, inquiring:

> Has the defendant, the defendant's insurance company, defendant's attorneys or defendant's employees caused any surveillance, background, investigation, or activities check to be conducted concerning the plaintiff? If so, state:
>
> a. The name, telephone number, business and personal address of the person who conducted said surveillance, background, investigation, or activities check.
>
> b. The date of each surveillance, background, investigation, or activities check.
>
> c. The name, telephone number, business and personal address of the person who has present possession of the results of said surveillance, background, investigation, or activities check.

R. 92, 108.

Pioneer and Wiesemann responded:

> **Objection.** This interrogatory necessitates the disclosure of witnesses which may be called and evidence which may be

used for purposes of impeachment. Such information is not discoverable until such time as the Defendants have deposed the Plaintiff, pursuant to *Snead v. American Export–Isbrandts[e]n Lines, Inc.* 59 F.R.D. 148 (1973).

Without waiving said objection, Defendant's attorneys are in possession of a video tape [sic] of Plaintiff's activities.

R. 65–66, 67. Bartels also served Request for Production No. 9 upon each party, seeking, "[a]ll photographs or videotapes taken of the plaintiff, at any time prior to, concurrent with, or subsequent to the accident described in plaintiff's complaint." R. 115, 117. Pioneer and Wiesemann objected to the request as follows:

**Objection.** The Defendant objects to the production of video tapes [sic] taken of the Plaintiff as such information constitutes impeachment evidence which is not discoverable until such time as the Defendant has taken Plaintiff's deposition pursuant to *Snead v. American Export–Isbrandts[e]n Lines, Inc.* 59 F.R.D. 148 (1973).

R. 66, 68. Upon the defendants' refusal to comply with the discovery requests, Bartels filed a motion to compel production of "all videotapes of the plaintiff prior to the plaintiff's deposition which is scheduled for March 21, 1996." R. 55. Pioneer and Wiesemann subsequently filed a motion for a protective order. After conducting a hearing on the matter, the court issued a March 11, 1996 order requiring production of the tape:

### *ORDER*

Plaintiff [a]ppears by Counsel, Attorney Ronald Kuker, and Defendants appear by Counsel James W. Roehrdanz. Attorney Kuker appears in person and Atty [sic] Roehrdanz appears by telephone. Counsel are before the Court regarding pending motions. Plaintiff's motion to compel discovery and Defendant's motion seeking a protective order over the discovery plaintiff is seeking. The briefs of counsel are read and the arguments of counsel are considered, the court being duly advised in the premises does now grant plaintiff's motion and order defendant to produce, at plaintiff's expense, a copy of the videotape of the plaintiff.

### ISSUE

The issue presented for the court's consideration was whether a videotape of the plaintiff taken before a lawsuit was filed is discoverable.

### DISCUSSION

Defendant[s] seek a protective order prohibiting the Plaintiff from obtaining a copy of the videotape. Defendant's [sic] argue's [sic] in his [sic] written submission the videotape, if discoverable, should be provided to opposing party after that part[y's] deposition has been taken. Defendant[s] [cite] a Federal case for his [sic] authority regarding this proposition. *Sne[a]d v. American Export–Isbrandts[e]n Lines, Inc.*, 59 F.R.D. 148 (1973). Defendant[s] also asserts [sic] that as work product produced prior to suit being filed that it was obtained as part of the investigative process and therefore not discoverable.

Plaintiff seeks a court order compelling defendant[s] to produce the videotape citing to the liberal discovery rules of Indiana. Plaintiff further cites to Trial Rules [sic] 26(B) and the cases discussing the general rule, that not all matters prepared in anticipation of litigation are protected.

This Court, as a trial Court with a large number of pending cases, appreciates the statement of [the] Supreme Court of Indiana in *Canfield v. Sandock* (1990) Ind., 563 N.E.2d 526 where discussing the Indiana Trial Rules the Court [s]tated: "The Indiana rules of discovery are designed to allow a liberal discovery procedure, the purpose of which are [sic] to provide parties with all information essential to litigation of all relevant issues, to eliminate surprise, and to promote settlement[.]" *[Id.]* at 528. The more information a party has, the more likely a settlement will result. This can only be accomplished with an open discovery policy. There are a few exceptions carved out in the trial rules

[Trial Rule 26(B)(4)] protecting or preserving some matters from discovery. However these exceptions are, rightly so, narrowly and strictly construed. Defendant[s][do] not point to any Indiana case supporting the Federal Court in Pennsylvania's position restricting the discovery of a videotape until after a part[y's] deposition has been obtained. The Pennsylvania Federal Court's view is litigious and antagonistic as it seems to encourage future wrangling between the parties. If not in pretrial matters, certainly at trial. Therefore, without Indiana authority to support suppression of discovery this court will continue to permit open access to information.

### Order

It [is] therefore ordered, adjudged and decreed by the Court that defendants deliver to plaintiff's counsel any and all videotapes of the plaintiff no later than March 14, 1996.

R. 118–19.

Subsequent to the court's order, Pioneer and Wiesemann filed Defendants' Motion to Reconsider or in the Alternative Motion to Certify for Interlocutory Appeal. The motion was supported by the affidavit of Lance Druckemiller, a claims supervisor employed by Pioneer's liability insurer, who testified the surveillance was conducted in anticipation of litigation. The trial court did not dispose of Pioneer and Wiesemann's motion to reconsider through a written order, but certified its March 11, 1996 order for interlocutory appeal.

### *STANDARD OF REVIEW*

█ The discovery rules are designed to allow a liberal discovery process, the purposes of which are to provide parties with information essential to litigation of the issues, to eliminate surprise, and to promote settlement. *Rivers v. Methodist Hosps.,*

---

1. We dismiss Bartels's contention that Pioneer and Wiesemann have waived any arguments concerning the work product privilege for failure to raise them before the trial court. Although Bartels portrays the issues at trial as limited to the use of the tape for impeachment and the timing of discovery, it is apparent from the record, as

*Inc.,* 654 N.E.2d 811, 813 (Ind.Ct.App.1995). Due to the fact-sensitive nature of discovery matters, the ruling of the trial court is cloaked in a strong presumption of correctness on appeal. *Mutual Sec. Life Ins. Co. by Bennett v. Fidelity and Deposit Co.,* 659 N.E.2d 1096, 1103 (Ind.Ct.App.1995), *trans. denied* (1996). Our standard of review in discovery matters is limited to determining whether the trial court abused its discretion. *Richey v. Chappell,* 594 N.E.2d 443, 447 (Ind. 1992). This court will reverse only where the trial court has reached an erroneous conclusion which is clearly against the logic and effect of the facts of the case. *Indiana State Bd. of Pub. Welfare v. Tioga Pines Living Ctr., Inc.,* 592 N.E.2d 1274, 1276 (Ind. Ct.App.1992), *trans. denied.* There will be no reversal of a trial court discovery order without a showing of prejudice. *Coster v. Coster,* 452 N.E.2d 397, 400 (Ind.Ct.App. 1983); Ind.Trial Rule 61.

### *DISCOVERABILITY OF SURVEILLANCE VIDEOTAPE*

Bartels contends the trial court's order compelling production of the surveillance videotape was in accord with Indiana's liberal and open discovery policy, emphasizing the broad discretion conferred to the trial court in matters of discovery. Pioneer and Wiesemann, on the other hand, argue the videotape constitutes attorney work product and the trial court abused its discretion when it ordered production of the tape before they were given an opportunity to depose Bartels.[1]

Indiana Trial Rule 26(B)(1) requires that information sought in discovery be relevant, admissible, or reasonably calculated to lead to the discovery of admissible evidence, and not privileged. Indiana Trial Rule 26(B)(3) defines the work product privilege. According to subsection 3, a party may obtain dis-

---

well as the order compelling discovery, that Pioneer and Wiesemann utilized *Snead v. American Export–Isbrandtsen Lines, Inc.,* 59 F.R.D. 148 (E.D.Pa.1973), during pretrial proceedings to argue that the tape constituted attorney work product and was therefore entitled to protection.

covery of documents and tangible things otherwise discoverable and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his insurer) only upon a showing that the party seeking discovery: 1) has a substantial need for the materials in the preparation of his case; and 2) is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In no event, however, is a party seeking discovery entitled to the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of the party concerning the litigation. *Richey,* 594 N.E.2d at 445.

The tape does not reveal the mental impressions, conclusions, opinions, or legal theories of the appellants' attorney or representative. Therefore, if the material constitutes work product, and Bartels proves both a substantial need for the materials and undue hardship in obtaining the substantial equivalent of the tape, it is discoverable. The question of whether a surveillance videotape may constitute attorney work product that is protected from discovery is a question of first impression in Indiana.

In order to constitute work product, the material sought to be discovered must: 1) consist of documents or tangible things; 2) have been prepared in anticipation of litigation or for trial; and 3) have been prepared by or for another party or by or for that other party's representative. T.R. 26(B)(3). The videotape involved in the present case is certainly a tangible thing, and the parties agree that it was prepared by Pioneer's insurer. The parties, however, are in disagreement as to whether the videotape recordings were taken in anticipation of litigation.

The United States Supreme Court formulated the work product doctrine as a means of insuring the fullest possible knowledge of the issues and facts involved in a case without sacrificing the "wits" of attorneys actively engaged in the process of preparing for litigation. *DeMoss Rexall Drugs v. Dobson,* 540 N.E.2d 655, 657 (Ind.Ct.App.1989) (citing *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). The policy behind the rule of *Hickman* and its progeny, now codified in Fed.R.Civ.P. 26(b)(3), the federal counterpart to our own trial rule, is to protect the integrity of the adversary process. *Tioga Pines Living Ctr., Inc.,* 592 N.E.2d at 1276.

■ An investigation by an insurance company does not automatically require a finding the investigation was conducted in anticipation of litigation. *Burr v. United Farm Bureau Mut. Ins. Co.,* 560 N.E.2d 1250, 1254 (Ind.Ct.App.1990), *trans. denied* (1991). A document generated or obtained by an insurer is entitled to the protection from discovery found in Indiana Trial Rule 26(B)(3) if the document can fairly be said to have been prepared or obtained because of the prospect of litigation and not, even though litigation may already be a prospect, because it was generated as part of the company's regular operating procedure. *DeMoss Rexall Drugs,* 540 N.E.2d at 658. Documents are work product because their subject matter relates to the preparation, strategy, and appraisal of the strengths and weaknesses of an action, or to the activities of the attorneys involved. *Tioga Pines Living Ctr., Inc.,* 592 N.E.2d at 1277 (citing 4 Moore's Federal practice Sec. 26.64[1] at 26–349 (1970)). There is no clear-cut rule to determine whether an insurance company's investigation is discoverable; the determination whether the investigation is discoverable depends upon the facts of each case. *Burr,* 560 N.E.2d at 1255. The test has been articulated as "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Burr,* 560 N.E.2d at 1254; *American Bldgs. Co. v. Kokomo Grain Co., Inc.,* 506 N.E.2d 56, 63 (Ind.Ct.App.1987), *trans. denied* (each quoting 8 Wright & Miller, Federal Practice & Procedure Sec. 2024, at 198 (1970)).

■ Bartels maintains Pioneer and Wiesemann may not rely on Druckemiller's affidavit to prove that the videotape was obtained in anticipation of litigation, inasmuch as the affidavit was not before the trial court when the court entered its March 11, 1996 order. Without reaching the issue of whether the

affidavit may be considered on appeal, we conclude that the surveillance materials can fairly be said to have been prepared because of the prospect of litigation. As the Supreme Court of Rhode Island stated in *Cabral v. Arruda:*

> Possible purposes of surveillance photographs may be to aid an attorney in understanding the adversary's injury because of a possible lawsuit, to impeach the plaintiff's version of his or her injuries at trial, or to offer the surveillance photographs as substantive evidence. In all three instances, surveillance photographs are made precisely in anticipation of litigation.

556 A.2d 47, 49 (R.I.1989). Although an insurance company might investigate the veracity of a claimant's injuries as part of its regular operating procedure, it seems needless to record the activities of the claimant unless it is anticipated that those recordings will be used against the claimant during litigation. *See Ward v. CSX Transp., Inc.,* 161 F.R.D. 38, 40 (E.D.N.C.1995) ("Surveillance materials are clearly within the definition of work product since they are tangible and were prepared in anticipation of litigation by or for a party to the litigation."); *Wegner v. Viessman, Inc.,* 153 F.R.D. 154, 159 (N.D.Iowa 1994) ("Surveillance materials are certainly prepared in anticipation of litigation.") We therefore conclude that the videotape was prepared in anticipation of litigation and constitutes attorney work product.

■ Although the videotape constitutes work product, Bartels urges this Court to affirm the discovery order because she has a substantial need for the videotape and is unable to obtain the substantial equivalent of the videotape through other means. To be sure, the second prong of the work product test is satisfied by the uniqueness of the videotape, which is available only from the appellants. Bartels does not know when the tape was recorded or what activities are portrayed on the tape. The basis of Bartels's substantial need for the videotape, on the other hand, is a function of whether the tape is produced at trial. If the surveillance tape is not discoverable and the defense offers the tape as evidence, then Bartels is deprived of the proper means to conduct effective cross-

examination or seek rebuttal testimony regarding the accuracy and authenticity of the tape. We therefore conclude that Bartels has a substantial need for the videotape if it is to be produced at trial.

Bartels contends that she has a substantial need for the videotape even if it is not presented at trial because the substantive evidence contained on the video is necessary to the presentation of her case. Bartels maintains that

> [t]here is likely no better source from which to prove an injury than a videotape, taken by an adverse party, while the subject did not know the surveillance was being conducted. The defendants could hardly claim that the videotape was altered or that the plaintiff was "playing to camera" in response to what is memorialized on the videotape. Simply put, the defendants have evidence that may prove, like no other evidence can, the nature and extent of the plaintiff's injuries.

Brief of the Appellee at 12–13.

In *Fisher v. National R.R. Passenger Corporation,* 152 F.R.D. 145 (S.D.Ind.1993), the federal district court rejected a plaintiff's claim that he had a substantial need for certain non-evidentiary videotapes which presumably contained substantive evidence. The court held that the plaintiff was his own source of information and testimony regarding the extent of his injuries and that the plaintiff therefore did not need the videotapes to prove his case. Although *Fisher* is not binding, we find its reasoning persuasive. Bartels has shown only that production of the videotape would strengthen her case; she has not made the required showing that she has a substantial need for the videotape. Like the plaintiff in *Fisher,* Bartels can effectively prove the extent of her injuries without the benefit of the surveillance videotape. Bartels has a substantial need for the tape only if Pioneer and Wiesemann intend to present it at trial.

Conceding that Bartels has a substantial need for the tape if it is to be shown at trial, appellants urge us to adopt the balancing approach articulated in *Snead.* In *Snead,* the federal district court held that surveillance videotapes which were to be used at

trial were not discoverable until the defense was given an opportunity to depose the plaintiff. The court expressed the need to balance the interests of the parties as follows:

Every need to provide information must be balanced against the need to withhold it. The need to know is but the converse of the need to keep secret. The only time there will be a substantial need to know about surveillance pictures will be in those instances where there would be a major discrepancy between the testimony the plaintiff will give and that which the films would seem to portray. By the same token this would be the only instance where there is a substantial need to withhold that information from plaintiff's counsel. If the discrepancy would be the result of the plaintiff's untruthfulness, the substantial need for his counsel to know of the variance can hardly justify making the information available to him. On the other hand, if the discrepancy would result from misleading photography, the necessary background information should be made available to the plaintiff's attorney so the fraud can be exposed. It goes without saying that the means to impeach should not be the exclusive property of the defense. Any rule to be formulated, therefore, must balance the conflicting interests of the plaintiff against the conflicting interests of the defendant and protect both insofar as it is possible to do so. In addition, the objectives of the discovery rules must be kept in mind so that a just and speedy determination of cases can be obtained.

*Snead,* 59 F.R.D. at 151.

The court concluded that the purposes of discovery are best achieved by requiring the defense to disclose the existence of surveillance films or be prohibited from presenting them at trial. *Snead,* 59 F.R.D. at 151. The court further required that, before disclosure, the defense be given an opportunity to depose the plaintiff fully as to his injuries, their effects, and his present disabilities. *Id.*

We find the reasoning of *Snead* persuasive. Disclosure of the surveillance videotape after Bartels has been deposed and prior to trial preserves the impeachment value of the videotape and allows Bartels to obtain the information necessary for effective cross-examination and to secure rebuttal testimony. The trial court's order requiring disclosure before Bartels's scheduled deposition resulted in prejudice to Pioneer and Wiesemann and constituted an abuse of discretion.

In conclusion, the tape is discoverable only if Pioneer and Wiesemann choose to present it at trial. Before disclosure, however, Pioneer and Wiesemann must be given the opportunity to depose Bartels fully regarding her injuries and disabilities.

Judgment reversed and remanded to trial court with instructions to proceed in conformance with this opinion.

SHARPNACK, C.J., and DARDEN, J., concur.